UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

RICHARD EUGENE LOCKARD            Case No. 10-24633-dob
and JEAN ELLEN LOCKARD,           Chapter 13 Proceeding
          Debtors.           Hon. Daniel S. Opperman
_____/

OPINION REGARDING DEBTORS' MOTION TO DIRECT
APPLICATION OF FUNDS AND
<u>SCHEDULING TELEPHONIC STATUS CONFERENCE</u>

<u>Introduction</u>

The Debtors, Richard and Jean Lockard, (the "Debtors") filed a Motion to Direct Application of Funds (the "Motion") regarding monies received by the United States of America, Internal Revenue Service, (the "IRS"). The IRS responded to the Debtors' Motion and the Court heard oral arguments on January 9, 2014. At the conclusion of oral arguments, the Court took this matter under advisement.

<u>Background Facts</u>

The Debtors incurred a tax liability to the IRS resulting in a Judgment entered by the United States District Court for the Eastern District of Michigan in the case of *United States v. Richard E. Lockard and Jean E. Lockard*, No. 09-11708-BC (E.D. Mich.) (the "District Court Action"). Sensing that they could not pay their obligations to the IRS immediately, the Debtors filed a Chapter 13 petition with this Court on December 20, 2010, and a Chapter 13 Plan on January 3, 2011. Paragraph II(F)(3) of the Debtors' Plan states:

1

> F. PROOFS OF CLAIMS FILED AT VARIANCE WITH THE PLAN: In the event that a creditor files a proof of claim that is at variance with the provisions of this Plan, the following method is to be employed to resolve the conflict:
>
> . . .
>
> 3. If a holder of a claim files a proof of claim at variance with this Plan or related schedules, the Trustee shall automatically treat that claim as the holder indicated, unless provided otherwise by the order of the Court.

The IRS filed a Motion for Relief From Stay with this Court on February 16, 2011, and the Debtors responded to that Motion for Relief on March 3, 2011. In the interim, the Court confirmed the Debtors' Chapter 13 Plan on February 18, 2011.

The IRS filed a Proof of Claim on March 18, 2011, stating that a total of $628,248.25 was owed and designating $423,800.00 as a secured claim and $95,545.30 as an unsecured priority claim. The remaining amount, $108,902.95, was designated by the IRS in its Proof of Claim as an unsecured general claim. Neither the Debtors or the Chapter 13 Trustee have objected to the Proof of Claim of the IRS.

On April 6, 2011, the IRS and the Debtors resolved their differences regarding the Motion for Relief From Stay of the IRS and on June 8, 2011, the Court approved that stipulation in an Order entitled: "Order Approving Stipulation Resolving All Issues in Creditor United States' Motion to Lift Stay, and Immaterially Modifying and Clarifying Chapter 13 Plan" (the "June 8, 2011, Order"). Pertinent portions of the June 8, 2011, Order include:

> 1. This order resolves all issues raised in the United States' Motion to Lift the Automatic Stay filed on February 16, 2011 (which upon entry of this order shall be deemed withdrawn except to the extent the stay is modified pursuant to this order). The parties also agree that some of the terms set forth below constitute immaterial modifications and/or clarifications of the debtors' Chapter 13 Plan found at Docket No. 15 (the "Plan"), and will govern any subsequent amended plan as well.

. . .

  5. Dr. Lockard will apply for pension benefits with the Municipal Employees Retirement System of Michigan ("MERS") within 30 days of this order. Dr. Lockard will select a pension that provides for a t least $1,071.22 in monthly payments net of any required tax withholdings, and shall not select any beneficiary except Ms. Lockard. The failure to select a pension which pays at least that amount or the naming of another beneficiary shall be deemed a material default under this agreement.

  6. The automatic stay is lifted to allow the United States to levy on the MERS pension benefits described in paragraph 5, above, in an amount up to $1,071.22 per month for 57 months. Ms. Lockard agrees that the United States may continue to levy on any survivorship benefits to which she may be entitled until the United States receives all payments described in paragraph 5, above, and may apply any payments received to either her or Dr. Lockard's unpaid federal tax liabilities.

  7. The automatic stay is lifted to allow the United States to levy on the debtors' IRA and 401K accounts. By July 7, 2011, the debtors shall provide counsel for the United States the following information with respect to each known IRA and 401K account: (1) the name(s) of the account holder(s), (2) the account number, (3) the address of the financial institution where the account is located, and (4) the last three months of account statements. Within 14 days after the discovery of any additional IRA or 401K account(s), the debtors will also provide the United States the above information with respect to any additional account(s). The failure to provide required information, as well as the removal of any funds from any known or unknown accounts after March 22, 2011, shall be deemed a material default under this agreement.

  8. The United States consents to the payment of $2,442.98 for 120 months pursuant to paragraph 1.D.5. of the Plan for its secured claim with respect to the real property located at 5418 Pigeon Road, Elkton, Michigan.

. . .

The debtors will make the first 60 payments within the Plan (or any amended plan) to the trustee as part of their larger plan payments and it is understood that the trustee will distribute $2,442.98 monthly to the IRS toward its secured claim (in addition to the sum required toward its priority claim discussed below). The debtors will make the 60 payments following the 60th payment to the trustee directly to the Department of Justice, Tax Division, at the address below.

9. The payments made to the Department of Justice, Tax Division, under paragraph 8, above, shall begin on March 15, 2016. Each payment which is made directly to the Department of Justice, Tax Division, shall be postmarked by the 15th of each month, or shall include a $50 late fee. The checks shall be payable to United States Treasury and shall include a notation "E.D. Mich. Bkcy No. 10-24633 settlement" and the taxpayer identification number of Richard E. Lockard.

10. The debtors do not object to the priority claims asserted by the United States in its proof of claim. Pursuant to the Plan (or any amended plan), the debtors will pay the United States' priority claims in full, which shall be in addition to the secured claim indicated above. The IRS may file notices of federal tax lien with respect to its priority or unsecured tax claims but that will not convert those claims into secured claims and is solely for purposes of securing the tax liabilities in the event of a default by the debtors of their obligations under this agreement.

11. If the debtors successfully complete the Plan (or any amended plan), the United States will release any federal tax liens securing tax liabilities that have been satisfied. If the debtors make all required payments in paragraphs 8, 9, and 10, above, and make full disclosures pursuant to paragraph 12, below, the debtors' liabilities shall be deemed discharged after all the payments under paragraphs 6, 7, 8, 9, and 10, above, have been received by the United States. Once the debtors' liabilities have been deemed discharged, the United States will release all remaining tax liens relating to liabilities identified in the United States' proof of claim. If the debtors fail to complete all required payments in paragraphs 8, 9, and 10, above, including those outside the Plan (or any amended plan), all of the debtors' tax liabilities will be excepted from discharge.

. . .

18. The United States and the debtors intend that the Bankruptcy Court maintain jurisdiction over the enforcement of this order. If any party fails to comply with any paragraph of this order, the adversely affected party may seek enforcement of the relevant requirement or alternatively may exercise any right provided for herein that does not require judicial intervention.

Per the June 8, 2011, Order, the Debtors and the IRS devised a method to address the secured claim of the IRS, but yet allow for treatment and payment of the priority claim in full in the Debtors' Chapter 13 Plan.

After the June 8, 2011, Order, the Debtors took the actions required of them in that Order and the IRS started receiving money from the sources detailed in the June 8, 2011, Order, as well

as from the Chapter 13 Trustee. In 2013, however, the Chapter 13 Trustee filed a Motion to Dismiss, stating that the Debtors failed to make full and complete payments of $3,368.70 per month and failed to remit their 2011 and 2012 income tax returns to determine the amount that should be paid to the Trustee. The IRS filed a Response on November 4, 2013, and the Debtors filed a Response on November 14, 2013. Subsequently, the Debtors and the Chapter 13 Trustee resolved their differences, but the lack of funding issues raised by the IRS in its Response still remain.

To address and repair the lack of funding problems in their Chapter 13 Plan, the Debtors propose in their Motion to Direct Application of Funds to have the IRS reapply various funds received from the sale of real property or from pension and retirement funds of the Debtors such that the priority claim can be paid in full during the course of the Chapter 13 Plan without significant additional funding by the Debtors over and above the amount presently agreed to by the Debtors and the Trustee of $3,618.70 per month as set forth in the December 6, 2013, Order Resolving Trustee's Motion to Dismiss.

The IRS opposes this request as contrary to the terms of the June 8, 2011, Order and general bankruptcy and case law, as well as possibly beyond the jurisdiction of this Court.

I. Jurisdiction of the Court

Generally, this Court would have jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate), (B) (allowance or disallowance of claims against the estate or exemptions from property of the estate), (G) (motions to terminate, annul, or modify the automatic stay), and (L) (confirmations of plans).

This Court must determine whether all issues before it arise out of Title 11 of the United

States Code and do not involve issues which limit this Court's jurisdiction as raised in the cases of *Stern v. Marshall*, 131 S. Ct. 2594 (2011) and later by the Sixth Circuit Court of Appeals in *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

The IRS argues that the Court may not have jurisdiction over the treatment of its claim filed with this Court or, more specifically, the direction the IRS wishes to take in applying monies received from any source other than the Chapter 13 Bankruptcy Trustee. While at first blush it would appear that the position of the IRS is inconsistent, a closer examination of its arguments, as applied to the facts of this case and the results after the application of the facts, leads this Court to conclude that it does have jurisdiction of the salient matters presented by the parties.

First, the Court distinguishes this Chapter 13 case from Chapter 7 cases. Chapter 13 cases are by definition the reorganization of debts and obligations owed by debtors to their creditors and, in the Chapter 13 context, requires an adjustment of those claims and resulting payments. In a Chapter 7 setting, where a debtor receives a discharge and there is no effort by the debtor to pay any or all obligations owed over a period of time, the Court's administration of the debtor/creditor relationship is more limited. In reorganization cases, such as Chapter 13 and Chapter 11, the Court has been granted broader authority in the Bankruptcy Code.

Second, the filing of the Proof of Claim by the IRS in this case confers jurisdiction for this Court to exercise authority over payment of that claim. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989). Here, as stated in the Chapter 13 Plan, the priority claim is treated by the Trustee automatically as indicated by the holder, unless provided otherwise by a court order.

Here, the IRS has divided its claim into three parts: secured, unsecured priority, and unsecured. The Chapter 13 Plan properly provides for payment of a portion of the secured claim

of the IRS and further provides that the unsecured priority claim of the IRS shall be paid in full during the term of the Chapter 13 Plan. This is consistent with the Bankruptcy Code 11 U.S.C. § 1322(a)(2).

Third, the IRS voluntarily filed, not only a Proof of Claim, but also a Motion for Relief From Stay with this Court. In its Motion for Relief, the IRS sought relief from the automatic stay to allow it to exercise certain rights granted to it in the District Court Action. The Debtors responded to this Motion for Relief and the parties reached an agreement as to the secured claim of the IRS. As a result of the June 8, 2011, Order, the IRS was allowed to exercise certain rights without violating the automatic stay to either sell property or execute and receive a stream of payments from pension and retirement funds. Per the agreement of the Debtors and the IRS, these monies were to be applied to the secured debt of the IRS and not to the priority claim of the IRS.

Finally, the Debtors and the IRS agreed in the June 8, 2011, Order that this Court would maintain jurisdiction over the enforcement of the Order. While the Court recognizes that the parties cannot consent to jurisdiction that does not exist, the Court also notes that when jurisdiction exists, as it does in this case, the parties may confirm and restate that existence. Here, the Court is being asked in part to enforce the terms of the June 8, 2011, Order, which is clearly within the Bankruptcy Code, and the holding of *Stern v. Marshall*, 131 S. Ct. 2594 (2011), as well as a core proceeding as set forth by 28 U.S.C. § 157(b)(2).

As will be demonstrated in the following sections of this Opinion, the exercise of the Court's jurisdiction becomes clearer when the Court applies bankruptcy law principles.

II.  The Chapter 13 Plan of the Debtors

The Debtors' Chapter 13 Plan essentially calls for payments from the Debtors to the Trustee

7

and then payments by the Trustee to the IRS on both the secured and priority claims. As stated by the confirmed Chapter 13 Plan and as argued by the IRS, the priority claim of the IRS is automatically treated by the Trustee as indicated by the IRS. In fact, neither the Debtors or the Chapter 13 Trustee have objected to the claim of the IRS since its filing on March 18, 2011. Moreover, as stated in the June 8, 2011, Order of this Court, the Debtors stated that they do not object to the priority claim of the IRS. With these concepts, the payment of the IRS priority claim of $95,545.30 is essentially reduced to an arithmetic exercise of dividing that number by the months of the Chapter 13 Plan.

### III. The June 8, 2011, Order

The Debtors' Motion to Direct Application of Funds runs counter the June 8, 2011, Order of this Court. First, the Debtors seek to have monies received by the IRS from either the liquidation of real estate or from the income stream of pension and retirements funds to be reapplied from secured debt to priority debt. As noted by the IRS, the Debtors may have the right to direct voluntary payment, but they do not have the right to direct involuntary payments. *See National Bank of the Commonwealth v. Mechanics' National Bank,* 94 U.S. 437 (1876); *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir. 1983); *O'Dell v. United States*, 326 F.2d 451, 456 (10th Cir. 1964). Moreover, payments made in the Chapter 13 setting are deemed to be involuntary payments and, therefore, not subject to control by the Debtors, absent specific direction in a Chapter 13 Plan confirmed by the Court.

Here, the Chapter 13 Plan confirmed by this Court directs the Chapter 13 Trustee to make monthly payments to the IRS on both the secured and the priority claim. The IRS did not object to this treatment and no parties objected to the Proof of Claim of the IRS.

As for the payments received by the IRS as detailed in the June 8, 2011, Order of this Court, the Court disagrees with the Debtors' reading of that Order and agrees with the interpretation of the IRS. Structurally, the first nine paragraphs of the Order detail actions the IRS and the Debtors take to turn various assets of the Debtors into cash and then application of those proceeds to the secured claim. In fact, the issue of a priority claim is not raised in the June 8, 2011, Order until paragraph 10, which contains a sentence that, in this Court's view, gives all the necessary direction to all parties: "Pursuant to the Plan (or any amended plan), *the debtors will pay the United States' priority claims in full, which shall be in addition to the secured claim* indicated above." (*emphasis added*). The Court sees only one reading of this paragraph. The Debtors and the IRS had agreed to the liquidation and treatment of certain assets to apply to the secured claim of the IRS. Part of that payment included payments made by the Debtors to the Trustee who in turn would pay the IRS. These payments stand alone as payments to the secured claim and cannot be directed to any other claim unless the Debtors and the IRS subsequently agree to do so. Here, it is abundantly clear that the IRS does not agree to those payments being redirected.

Neither can this Court find any legal authority to require the IRS to make such a change in how these payments are directed. Other than the fact that it is more convenient and affordable for the Debtors to have the payments redirected, there is no authority that this Court can find to order such a result. Moreover, with this record, and with the language of the June 8, 2011, Order, the Court would not order otherwise.

IV. Affirmative Matters Raised by the Debtors

The Debtors argue that the IRS should be precluded from raising responses to their Motion because of equitable doctrines such as laches or collateral estoppel. Generally, the application of

9

laches as a defense against the IRS is problematic at best. *United States v. Mandycz*, 447 F.3d 951, 964 (6th Cir. 2006) ("'It is well settled that the United States is not . . . subject to the defense of laches in enforcing its rights.'") (quoting *United States v. Summerlin*, 310 U.S. 414, 416 (1940)). Second, the application of the doctrine of laches to this case is on its face unwarranted. The Debtors claim that this Court should look at the actions of the IRS after the June 8, 2011, Order, and conclude that by waiting approximately two years before taking the act of filing a responsive pleading to the Trustee's Motion to Dismiss is too long. The Court disagrees because the June 8, 2011, Order in part required the Debtors to make payments to the Trustee, as well as to take action to cause payments to be made to the IRS. The Debtors took this action, and the IRS was receiving payments. What the IRS did not do was carefully check the Debtors' Chapter 13 Plan on a month-to-month basis to see if the Debtors were current on their payments to the Trustee or whether the math in the Chapter 13 Plan was such that the Debtors would pay their priority claim within the duration of the Chapter 13 Plan. While this may be true, it asks too much of the IRS. First, the IRS has had the obligation to sort through the secured claim actions taken by the Debtors and acted timely in doing that. Second, it is not the duty of the IRS to check the Debtors' Chapter 13 Plan on any periodic basis to see if it is feasible. While this Court cannot completely rule out a fact situation that would allow for the application of laches, the facts and circumstances in this case simply do not compel the Court to find a basis to apply the doctrine of laches in this case.

As to collateral estoppel, while the Debtors may be correct that the concepts of collateral estoppel could apply here, the actual application in the form of the enforcement of the June 8, 2011, Order compel a result opposite of that requested by the Debtors, all for the reasons set forth in this

10

Opinion. In this Court's view, the IRS has acted consistently with the June 8, 2011, Order of this Court and the Chapter 13 Plan. The Court sees no reason to apply the doctrine of collateral estoppel in any other fashion other than to confirm that the IRS has acted correctly as to the Debtors.

The Court does note an issue that was raised by the Chapter 13 Trustee at the January 9, 2014, hearing that deserves discussion. At some point, the IRS must report to the Chapter 13 Trustee the status of the payments made to it so that the Chapter 13 Trustee can assure himself and, by extension, other creditors, that the IRS has not been overpaid. While with this record that appears to be unlikely, the IRS should at some time report the receipt of the monies it has received and the application of those monies so that the Chapter 13 Trustee can ensure that there has not been an overpayment of the IRS claim. While this request was not formally made by a written pleading, the Court reserves the right of the Chapter 13 Trustee to make that request at the appropriate time.

## V. Summary

As applied to this case, the Court concludes that the Court has jurisdiction as to the interpretation and enforcement of the June 8, 2011, Order. The application of that Order is consistent with the general statements of jurisdiction as set forth in 28 U.S.C. § 1324, 28 U.S.C. § 157, and the cases of *Stern v. Marshall*, 131 S. Ct. 2594 (2011) and later by the Sixth Circuit Court of Appeals in *Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

## VI. Outstanding Motion to Dismiss Issues

The IRS filed a Response to the Motion to Dismiss of the Chapter 13 Trustee. At the January 9, 2014, hearing, the Chapter 13 Trustee urged this Court to not disturb the December 6, 2013, Order that he had entered by way of an agreement with the Chapter 13 Debtors. The Court sees no reason

11

to set aside that Order at this time, but does note that there will be a shortage in the payment of the priority claim if the Chapter 13 Plan continues as written. As argued by Debtors' counsel on January 9, 2014, however, other exempt assets may be available to pay that shortage, if it occurs. At this time, the Court will leave open the issue of whether this case should be dismissed and allow Debtors' counsel the opportunity to examine the potential shortage in payment of the priority claim and then address that shortage in a modified Chapter 13 Plan. The Court will set a telephonic status conference regarding that issue.

## Conclusion

For the reasons stated in this Opinion, the Court denies the Debtors' Motion to Direct Application of Funds. The Court will set a telephonic status conference on **Monday, March 17, 2014, at 9:00 a.m.** to address the remaining issues raised by the IRS as detailed in this Opinion.

**Signed on February 03, 2014**

                                           **/s/ Daniel S. Opperman**
                                           **Daniel S. Opperman**
                                           **United States Bankruptcy Judge**