UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

RICHARD EUGENE LOCKARD                 Case No. 10-24633-dob
and JEAN ELLEN LOCKARD,                Chapter 13 Proceeding
          Debtors.                     Hon. Daniel S. Opperman

_____/

OPINION OVERRULING OBJECTIONS OF TRUSTEE
AND DEBTORS TO PROOF OF CLAIM OF INTERNAL REVENUE SERVICE

Introduction

On September 2, 2014, the Chapter 13 Trustee, Thomas McDonald, Jr., filed an Objection to Claim of Internal Revenue Service ("IRS") ("Objection"). In his Objection, the Trustee focuses on the secured portion of the Internal Revenue Service Claim ("IRS Claim"), which the IRS stated as $423,800.00. In particular, the Trustee argues that the IRS received $11,749.49 from the sale of property located at 5107 Whalen Street, Elkton, Michigan 48731 ("Whalen Street Property"), which is far less than the $82,000.00 value placed on this property by the Debtors. Accordingly, per the Trustee, the IRS Claim must be reduced to reflect that significant difference in the value as stated in the Schedules and the amount as actually realized by the IRS.

The Debtors joined the Trustee's Objection and also pointed out that there are real property taxes totaling $6,042.79, which have priority over the claim of the IRS.

In its response, the IRS states that the Trustee's Objection should be overruled and that per the Chapter 13 Plan and various Orders of this Court, the relief requested by the Trustee and the Debtors is inappropriate. For the reasons stated in this Opinion, the Court overrules the Objections of the Trustee and the Debtors to the Proof of Claim of the IRS.

1

Findings of Fact

After entry of a Judgment in favor of the IRS and against the Debtors by the United States

District Court for the Eastern District of Michigan in the case of *United States v. Richard E. Lockard*

*and Jean E. Lockard*, No. 09-11708-BC (E.D. Mich.), the Debtors filed a petition with this Court

seeking relief under Chapter 13 of the Bankruptcy Code. On January 4, 2011, the Debtors filed their

Chapter 13 Plan, which identified an obligation owed to the IRS in the amount of $250,000.00 as

a Class Five Claim (Other Secured Claims). The property securing this obligation was identified

as 5418 Pigeon Road ("Pigeon Road Property") and the Chapter 13 Plan proposed to pay $2,442.98

per month to the IRS. The Chapter 13 Plan also identified that it would take 120 months to pay this

obligation in full.

The Chapter 13 Plan also provided that the Debtors would surrender their residence, the

Whalen Street Property, in accordance with the secured claim thereon. Although not stated in the

Chapter 13 Plan, the IRS held a secured claim on this property. Also, the Chapter 13 Plan provided

for the following:

II.     GENERAL PROVISIONS

. . .

F.     PROOFS OF CLAIMS FILED AT VARIANCE WITH THE PLAN: In the
event that a creditor files a proof of claim that is at variance with the provisions of
this Plan, the following method is to be employed to resolve the conflict:

1.     Regarding claims for which the Plan does not propose a "cramdown" or
modification, the proof of claim shall supersede the Plan as to the claim
amount, percentage rate of interest, monthly payments, classification of the
claim, percentage of interest on arrears, if any, but the proof of claim shall
not govern as to the valuation of collateral.

. . .
3.     If a holder of a claim files a proof of claim at variance with this Plan or

2

related schedules, the Trustee shall automatically treat that claim as the holder indicated, unless provided otherwise by order of the Court.

. . .

NOTE: Debtor reserves the right to object to any claim.

The Chapter 13 Plan stated that unsecured creditors would receive 15% of the amount of the claim.

On March 18, 2011, the IRS filed a Proof of Claim in the total amount of $628,248.25. The IRS designated the secured portion of this claim as $423,800.00, the priority amount as $95,545.30 and the unsecured claim amount as $108,902.95. The IRS did not object to the Debtors' Chapter 13 Plan, but did file a Motion for Relief from Stay on February 16, 2011. The Debtors filed an Objection to the Motion for Relief from Stay, but then the IRS and the Debtors entered into a stipulation resolving the Motion for Relief from Stay. The Order approving this stipulation states in pertinent part:

2.      The debtors agree to make reasonable efforts to sell the real property located at 5107 Whalen, Elkton, MI 48731, (the "Whalen Property") . . . pursuant to the judgment of foreclosure entered in the United States District Court case *United States v. Richard E. Lockard and Jean E. Lockard*, No. 09-11708-BC (E.D. Mich.) (the "District Court Action"). . . . No closing shall occur until the proposed sale has been approved in writing by the United States, which may decline to approve a sale for any reason. All earnest money deposits will be held in escrow, and shall be immediately paid to the United States if the purchaser fails to perform. If the Whalen Property is sold, the United States will be paid all sale proceeds within 7 days of the closing via certified bank check made out to the Department of Treasury, after paying any local real estate taxes due and owing, and a reasonable commission to a real estate agent employed by the debtors, if applicable, not to exceed 6% of the purchase price. No commissions shall be paid to the debtors or their family members.

. . .

4.      If the debtors are unable to sell the Whalen Property pursuant to paragraphs 2 and 3, above, by December 3, 2011, the automatic stay will be automatically lifted (without the necessity of filing a motion) to permit the United States to sell the Whalen Property pursuant to the judgment entered in the District Court Action.

3

5.      Dr. Lockard will apply for pension benefits with the Municipal Employees Retirement System of Michigan ("MERS") within 30 days of this order. Dr. Lockard will select a pension that provides for at least $1,071.22 in monthly payments net of any required tax withholdings, and shall not select any beneficiary except Ms. Lockard.  The failure to select a pension which pays at least that amount or the naming of another beneficiary shall be deemed a material default under this agreement.

6.      The automatic stay is lifted to allow the United States to levy on the MERS pension benefits described in paragraph 5, above, in an amount up to $1,071.22 per month for 57 months.  Ms. Lockard agrees that the United States may continue to levy on any survivorship benefits to which she may be entitled until the United States receives all payments described in paragraph 5, above, and may apply any payments received to either her or Dr. Lockard's unpaid federal tax liabilities.

7.      The automatic stay is lifted to allow the United States to levy on the debtors' IRA and 401K accounts.  By July 7, 2011, the debtors shall provide counsel for the United States the following information with respect to each known IRA and 401K account: (1) the name(s) of the account holder(s), (2) the account number, (3) the address of the financial institution where the account is located, and (4) the last three months of account statements.  Within 14 days after the discovery of any additional IRA or 401K account(s), the debtors will also provide the United States the above information with respect to any additional account(s).  The failure to provide the required information, as well as the removal of any funds from any known or unknown accounts after March 22, 2011, shall be deemed a material default under this agreement.

8.      The United States consents to payment of $2,442.98 for 120 months pursuant to paragraph 1.D.5 of the Plan for its secured claim with respect to the real property located at 5418 Pigeon Road, Elkton, Michigan (the "Pigeon Property) . . .  The debtors will make the first 60 payments within the Plan (or any amended plan) to the trustee as part of their larger plan payments and it is understood that the trustee will distribute $2,442.98 monthly to the IRS toward its secured claim (in addition to the sum required toward its priority claim discussed below).  The debtors will make 60 payments following the 60th payment to the trustee directly to the Department of Justice, Tax Division, at the address below.

. . .

10.     The debtors do not object to the priority claims asserted by the United States in its proof of claim.  Pursuant to the Plan (or any amended plan), the debtors will pay the United States' priority claims in full, which shall be in addition to the secured claim indicated above.  The IRS may file notices of federal tax lien with

4

respect to its priority or unsecured tax claims but that will not convert those claims into secured claims and is solely for purposes of securing the tax liabilities in the event of a default by the debtors of their obligations under this agreement.

11.    If the debtors successfully complete the Plan (or any amended plan), the United States will release any federal tax liens securing tax liabilities that have been satisfied.  If the debtors make all required payments in paragraphs 8, 9, and 10, above, and make full disclosures pursuant to paragraph 12, below, the debtors' liabilities shall be deemed discharged after all the payments under paragraphs 6, 7, 8, 9, and 10, above, have been received by the United States.  Once the debtors' liabilities have been deemed discharged, the United States will release all remaining tax liens to liabilities identified in the United States' proof of claim.  If the debtors fail to complete all required payments in paragraphs 8, 9, and 10, above, including those outside the Plan (or any amended plan), all of the debtors' tax liabilities will be excepted from discharge.

. . .

13.    Any amended plan proposed by the debtors, to be confirmable, shall be consistent with this agreement and any inconsistency shall entitle the United States to a modification of the plan unless another creditor objects and the Court concludes that the objection is meritorious.

. . .

18.    The United States and the debtors intend that the Bankruptcy Court maintain jurisdiction over the enforcement of this order.  If any party fails to comply with any paragraph of this order, the adversely affected party may seek enforcement of the relevant requirement or alternatively may exercise any right provided for herein that does not require judicial intervention.

After the entry of the June 8, 2011, Order, the Whalen Street Property was sold and the IRS received $11,749.49.

In 2013, the Debtors failed to fulfill their obligations under their Chapter 13 Plan, which prompted the Chapter 13 Trustee to file a Motion to Dismiss that the IRS joined and to which the Debtors objected.  Although the Trustee and the Debtors were able to resolve their respective differences, the IRS continued to seek dismissal of the Chapter 13 case because the Debtors' Chapter 13 Plan was insufficient to pay the priority claim as stated in the June 8, 2011, Order.  In order to

5

resolve that issue, on December 6, 2013, the Debtors filed a Motion to Direct Application of Funds. In their Motion, the Debtors sought to have the Court order that the monies received by the IRS, based upon the IRA and pension levies, be applied to the unsecured priority claims. The Court denied the Debtors' request in an Opinion dated February 3, 2014.

As part of his Objection, the Trustee notes that in the Debtors' Schedules, the Pigeon Road Property is valued at $250,000.00 and that the Whalen Street Property is valued at $82,000.00. Given the nature of the IRS claim, personal property of the Debtors would also be subject to levy. Per the amended Summary of Schedules, the personal property had a value of $130,310.00. Upon closer examination, the Debtors' Schedule B is somewhat suspect in that the Municipal Employees Retirement System of Michigan ("MERS") Pension identified in Schedule B12 at $0 appears to have at least a sufficient value to generate $1,071.22 for 57 months, strongly suggesting that the value of this pension is greater than $0.

Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) (allowance or disallowance of claims against the estate) and (K) (determinations of the validity, extent, or priority of liens).

The issues in this matter arise from Title 11 of the United States Code and do not involve any matter which limits this Court's jurisdiction as detailed by the United States Supreme Court in *Stern v. Marshall*, ---- U.S. ----, 131 S. Ct. 2594, 2608, 180 L.Ed.2d 475 (2011), and later by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165 (2014). *See also Waldman v. Stone*, 698 F.3d 910 (6th Cir. 2012).

6

Analysis

The Debtors' Chapter 13 Plan provided that the Debtors would pay $3,368.70 per month and that the IRS would receive $2,442.98 per month on its secured claim. Additionally, the Chapter 13 Plan provided that the Debtors would surrender the Whalen Street Property to the IRS. Subsequently, the IRS and the Debtors agreed that the terms of the surrender of the Whalen Street Property would be such that the Debtors would be allowed the opportunity to sell that property, subject to IRS approval, with sale proceeds, after closing and related costs, paid to the IRS. As stated by the IRS, this occurred and the IRS received its money. Outside of the Chapter 13 Plan, the June 8, 2011, Order states and provides that the IRS would receive $1,071.22 from the MERS Pension for 57 months and that the IRS could levy on the IRA or 401K accounts as the case may be. This has also occurred.

The June 8, 2011, Order mirrored the Debtors' Chapter 13 Plan to require payments of $2,442.98 for 120 months in regard to the Pigeon Road Property. The Debtors are in the middle of this period and these payments will continue after the Debtors complete their Chapter 13 Plan, again as contemplated and agreed to by the parties.

The June 8, 2011, Order also directs that in the event that the Debtors complete their Chapter 13 Plan, the IRS will release those federal tax liens securing the tax liabilities that have been satisfied. Moreover, if the Debtors make the payments described in paragraphs 8, 9, and 10 of the Order and likewise make full disclosure of certain information not relevant to this Opinion, the Debtors' liabilities to the IRS shall be deemed discharged after all of the payments in paragraphs 6, 7, 8, 9, and 10. Thereafter, the IRS will release all remaining tax liens relating to the liabilities identified in the Proof of Claim of the IRS.

7

This arrangement is a compromise of the various interests and concerns of the IRS and the Debtors. For a period of at least 60 months, the Chapter 13 Trustee is charged with the receipt of sufficient monies to pay the secured claim in installments of $2,442.98 and also to receive sufficient monies to pay the priority claim as is required under the Bankruptcy Code. Moreover, all unsecured claims receive 15%.

The Trustee argues that his obligation is to file a report with the Court indicating that certain claims have been paid in full or the status of those claims. While true in many cases, here the June 8, 2011, Order modifies the Trustee's obligations. As to the secured claim, the Trustee is only required to account and report that he has received sufficient monies to pay the monthly installments of $2,442.98 for the applicable time period. The other monies received by the IRS, namely the sale proceeds from the Whalen Street Property, the MERS levy, and the 401K/IRA levies, are outside the Trustee's review and are beyond the scope of his report. While the Court commends the Trustee for vigilance in monitoring payments to the IRS, especially since there was a possibility that the sale of other assets could net more money than owed to the IRS, the significant difference between the $82,000.00 estimated by the Debtors for their property and the actual receipt of $11,749.49 by the IRS extinguishes that possibility. Moreover, had the Debtors properly disclosed their interests in the MERS pension, the secured claim of the IRS would be correspondingly higher.

The Court also notes that the subsequent modification of a Chapter 13 plan to allow for the surrender and sale of a property secured to a creditor and then reclassifying a deficiency as an unsecured claim is prohibited. *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000).

The holding in *Nolan* is clear: "We hold that a Debtor cannot modify a plan under Section 1329(a) by: (1) surrendering the collateral to a creditor; (2) having the creditor sell the collateral and

8

apply the proceeds towards the claim; and (3) having any deficiency classified as an unsecured claim." *Id.* at 535.

Once the Court confirmed the Debtors' Chapter 13 Plan, the secured claim of $250,000.00 was set with payments in the amount of $2,442.98. Likewise, the surrender of the Whalen Street Property was set with both the Debtors and the IRS taking the risk as to the sale of the property. Accordingly, the Objections of the Trustee and the Debtors to the Proof of Claim of the IRS are overrruled. Payment of the IRS claim is set through the terms of the Chapter 13 Plan and, as later extended, through the June 8, 2011, Order of the Court. This extension continues to require the IRS, upon satisfaction of certain conditions, to release various levies and discharge the obligations owed to it by the Debtors.

Conclusion

To summarize, the Trustee's duties of reporting in this case are slightly limited in that he need not concern himself with payments made outside of the Chapter 13 Plan and consistent with the June 8, 2011, Order of this Court. The Trustee's investigation and the disclosure of the IRS reveals that the IRS will not receive more than it is owed and that its secured claim is paid during the course of the Chapter 13 Plan at the rate of $2,442.98 per month. As is the case with many secured claims, amounts will be owed and thereafter paid in installments by the Debtors. The June 8, 2011, Order of the Court governs those payments and the duties and obligations of the IRS and the Debtors. For these reasons, the Court overrules the Objections of the Trustee and the Debtors.

9

Not for publication

**Signed on November 07, 2014**

_____ **/s/ Daniel S. Opperman** _____
**Daniel S. Opperman**
**United States Bankruptcy Judge**
